### THE K–7289.

### ALPER v. AHLQUIST.

### No. 12647.

District Court, E. D. New York.

May 4, 1932.

Hatch & Wolfe, of New York City (C. W. Wolfe, of New York City, of counsel), for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (R. F. Lenahan, of New York City, of counsel), for respondent.

INCH, District Judge.

This suit is brought by Lena Alper, as guardian of her son Abraham Alper, who was seriously injured in a collision between a pleasure boat which he was steering and a similar boat steered by the respondent, Ahlquist. Libelant claims that the injury sustained by her son was caused solely by the negligence of Ahlquist.

We need not discuss the injuries of Abraham Alper, for they were both severe and permanent. The responsibility of Ahlquist for such injury is the important issue. This issue is largely one of fact. In my opinion, the special circumstances found to exist must govern the decision. It is a question of whether both parties used due care.

The facts, briefly stated, are as follows: Between 3 and 4 o'clock, in the afternoon of July 19, 1931, two youths, Abraham Alper (18 years old) and Irving Geller (19 years old), were enjoying themselves in Alper's 16 foot outboard motorboat, the Echo Too. Alper was steering his boat, and, according to him, it was capable of making, with one person, 21 miles an hour and, with two, 17 to 18 miles an hour. The motor had no clutch, and was fastened outboard on the stern. Its hand throttle was both the steering handle and the motor control.

Alper had no license, and states that none was required for running this pleasure boat. He had been running this boat for about two years, and kept it moored at a float in Canarsie near the basin, which float was in the vicinity of where the accident happened, not far from a pier at which, at the time of the accident, the Rockaway Ferryboat Susquehanna was lying.

Alper was a mechanic employed by a concern dealing in speed boats and outboard motorboats, and for several years had been engaged in running such boats in the delivering of same to customers of his employers.

These young men were both in their bathing suits, and had been riding around in the motorboat for several hours. It was a pleasant afternoon. Alper and his friend then decided to tie up the boat at the float, and accordingly had proceeded from Canarsie, about 7 miles further down, and headed in the direction of the float.

There were other small pleasure boats in that vicinity, consisting of fishing boats, rowboats, etc., and, as Alper came around the pier in question, he was making about 18 miles an hour. Geller thought he recognized some one on the ferryboat Susquehanna, and asked Alper to slow down and go nearer to that vessel. Alper thereupon circled and went back towards the pier, slowing down to what he says was about 9 miles an hour. This maneuver brought Alper's boat parallel with the pier, and about 25 feet away from and

along the side of the ferryboat Susquehanna.

About this time the respondent, Ahlquist, was starting out from shore in his speed boat, accompanied by his wife and Mr. Fraenzenick. This boat is about 21 feet long, with an eight-cylinder Packard engine, which had been taken out of an automobile, installed in this boat.

Ahlquist is a licensed tug boat pilot (first class), and has been so employed for 14 years. His boat has never been tested, but he says could make from 16 to 18 miles.

Ahlquist was proceeding on a course approximately parallel to this pier, at which the said ferryboat lay, headed for the outer water for the purpose of having a boat ride.

He saw Alper off the Susquehanna "coming in towards me as if he was going to pass me on my port side. He would have cleared me about 25 feet. When he got about 20 feet away he made a sharp turn and cut right in front of my bow. His boat was lying over so much that you could hardly see the fellow that was sitting in the boat. The minute I saw him start to make this turn I pulled the clutch and the front of my boat settled down." The collision followed almost at once.

Thus Alper, after making this circle at the request of his friend Geller, a maneuver which had not been seen by Ahlquist, had been running along parallel with the Susquehanna, about off midships of that vessel, and, apparently because of his familiarity with his motor, together with that recklessness which exists in youth, then decided he would go across to his float and deliberately and suddenly cut across, at almost right angles, the direction line in which he saw Ahlquist proceeding towards him.

Geller, although naturally he favors his friend's claim, indicates in his testimony, when it is all considered, the taking of this chance. He says: "I noticed the K–7289 (Ahlquist's boat) when he was about 200 feet away. She was coming fast. I said to Alper, look out and see it does not smack-up. She was coming towards our stern."

Alper miscalculated either his speed or his distance, and Ahlquist's boat, in spite of all he could do, hit the starboard stern of Alper's boat, practically breaking it off. Alper was thrown into the water and severely injured. Geller jumped overboard and rescued Alper. Some men in a rowboat went to their assistance, and Ahlquist, as soon as it was safe, for he had shut his engine off before the collision and did not dare reverse on account of the danger of the propeller to the boy in the water, started up and swung around and took Alper ashore, whence he was taken to the hospital, and later his injured leg amputated between the knee and the thigh.

There were a number of eyewitnesses to this unfortunate collision, but a careful reading of all the testimony makes it fairly possible to reconcile any conflict which at first might appear to exist. The accident had happened very suddenly, which the sudden change of course of Alper's boat would indicate. Apparently until this change occurred there was nothing to indicate danger.

Certain of these eyewitnesses for libelant knew the boys or were distantly related. One of these eyewitnesses, Mr. Rod, with another, Miss Berman, were sitting on the right-hand side of the Susquehanna. He saw Alper come alongside of the Susquehanna, about 25 feet away, and, as they got about opposite them, Alper made a turn towards the left and went out, "at a sort of an angle." He saw the Ahlquist boat coming at what he says was fast speed, and the boats came together. He says the Ahlquist boat was "coming out straight." "I couldn't see any change of course."

Miss Berman says that Alper's boat was going away from the side of the Susquehanna, and that "before I could even breathe the collision happened."

If we turn to the witnesses for the respondent, we of course find this negligent turn on the part of Alper.

Fraenzenick, the guest of respondent, saw Alper's boat "on our left, coming straight towards us. If both had kept their courses we would have passed to the left of each other. When we got very close together the outboard motor made a sharp turn to the left, right across our bow. It was a matter of seconds."

Mrs. Ahlquist, who was sitting beside her husband, says: "I just saw the boat (Alper's) come down then turn, come right across us, that is all."

The respondent, however, was able to produce an entirely disinterested witness, who knew neither of the parties and who saw the collision. This was Capt. Freeman. He was captain of the ferryboat Susquehanna. He is a licensed captain, and has had a license for 22 years. He was on the lower deck forward on the ferryboat. He saw Alper's boat passing by the Susquehanna "about abreast of me, perhaps 25 feet, the other boat (Ahlquist's) was coming out from the op-

**1074**

posite direction. The outboard motorboat made a sharp turn to the left, throwing his boat across the bow of the speed boat."

Capt. Freeman also says that Alper's boat was going faster than Ahlquist's boat. "I should say Alper's boat was going 15 to 18 miles." He also saw Ahlquist "turn right back to the boat (Alper's) after the collision."

It is apparent, therefore, that the proximate cause of this collision was the careless turn of Alper across the bow of Ahlquist's boat at a time when anything that Ahlquist could do could not have prevented a collision.

Under such circumstances, when the negligence of Alper is so plain, it is not necessary to speculate on any question raised by the navigation of respondent. It is likewise fairly shown that, had Alper kept his course and not attempted this reckless turn, there would have been no collision.

The results to Alper have been very serious, but sympathy cannot take the place of proof. His injuries were caused by his own negligence. Libelant has failed to sustain the burden of proof resting upon her. The libel must be dismissed, with costs.

If this opinion is not considered a sufficient compliance with the rule 46½ of the Rules in Admiralty (28 USCA § 723), findings of fact and conclusions of law in accordance herewith may be submitted.